UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| CAMPBELL SOUP SUPPLY COMPANY, LLC, | § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No. 4:18-CV-00843 |
| v. | § § | |
| DIRECT CONTACT, LLC, | § § | |
| | § | |
| Defendant. | § | |

**NONPARTY HISCOX, INC.'S AMENDED MOTION
TO QUASH OR MODIFY SUBPOENA**

Nonparty Hiscox, Inc. (Hiscox) files this Amended Motion to Quash or Modify Plaintiff Campbell Soup Supply Company, LLC's (Campbell) Subpoena to Produce Documents, Information, or Objects, and in support thereof shows the following:

**I.
INTRODUCTION**

This case arises out of the sale of a water heating system. Specifically, Campbell contracted with Defendant Direct Contact, LLC (DC) to purchase a water heating system for Campbell's facility in Paris, Texas. According to Campbell, the system did not perform as required. Campbell sued DC on April 25, 2018, in the U.S. District Court for the Northern District of Ohio. In November 2018, the case was transferred to this Court.

After receiving a demand letter from Campbell in June 2016, DC reported the claim to Hiscox, the administrator of the professional liability policy issued to DC by Certain Underwriters at Lloyd's, London. Hiscox ultimately denied coverage for the claim in March 2019, after this lawsuit was filed. Nevertheless, on April 18, 2019, Campbell served a subpoena demanding that Hiscox produce documents from its claim and underwriting files.

Because Campbell's subpoena does not provide for a reasonable time to comply, seeks "work product" protected information, and creates an undue burden by seeking irrelevant and overly broad information from a nonparty, Hiscox filed a Motion to Quash or Modify the Subpoena (Dkt. # 49) on May 2, 2019. Hiscox now amends that motion to address Hiscox's complaints about Campbell's request for documents from Hiscox's underwriting file, which Hiscox's counsel had not received as of the filing of the prior motion.

## II.
## ARGUMENTS AND AUTHORITIES

Federal Rule of Civil Procedure 45 states that a district court "*must* quash or modify a subpoena that (i) fails to allow a reasonable time to comply . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A) (emphasis added).

Campbell's subpoena seeks the following documents:

1. Any and all non-privileged documents in your possession, custody, or control, including but not limited to communications, relating to the Professional Liability Errors & Omissions Insurance you provided to Direct Contact.

2. Any and all non-privileged documents in your possession, custody, or control, including but not limited to communications, relating to the insurance reflected in the Hiscox Certificate of Insurance No. ANE1125808.15 and any earlier versions thereof (e.g., ANE1125808.14).

3. Any and all non-privileged documents in your possession, custody, or control that are contained within your underwriting file or similar file(s) relating to insurance provided by you to Direct Contact, including but not limited to any applications, analyses, policies, coverage forms, declarations, endorsements, claims, and communications of any kind.

Exhibit A at p. 7. Further, Campbell has demanded that Hiscox provide the requested documents no later than May 8, 2019. Exhibit A at p. 3.

### A.     Campbell's Subpoena Does Not Provide a Reasonable Time to Comply.

Campbell's subpoena was served on CSC on April 18, 2019, and forwarded to Hiscox the following day, Friday, April 19, 2019.  Exhibit A at p. 1.  The subpoena required compliance no later than May 8, 2019, twenty days after service.  When a subpoena is issued pursuant to Rule 45, the responding party must be given a reasonable time to comply.  FED. R. CIV. P. 45(d)(3)(A).  In general, thirty days is considered a "reasonable time."  *Parra v. State Farm Lloyds*, No. 7:14-CV-691, 2015 WL 12940023, at *1 (S.D. Tex. Jan. 13, 2015).

When conferring about the original motion to quash, Campbell's counsel agreed to extend the deadline for Hiscox to produce documents in response to the subpoena to May 22, 2019, but would not agree to extend Hiscox's deadline to object to the subpoena, which was May 2, 2019.  *See* FED. R. CIV. P. 45(d)(2)(B). This was problematic because Hiscox had retained the undersigned counsel after the subpoena was served.  Moreover, Hiscox's counsel had not obtained all potentially responsive documents from his client—specifically, the underwriting file—as of May 2, 2019. Accordingly, Hiscox requested that the Court modify the subpoena objection deadline to give Hiscox until May 16, 2019, to object to the subpoena.  And, as agreed by Campbell's counsel, Hiscox further requested that the subpoena be modified to give Hiscox until May 22, 2019, to produce any non-privileged, responsive documents. *See Parra,* 2015 WL 12940023, at *1 (quashing a subpoena that only allowed for twenty-two days to respond); FED. R. CIV. P. 45(d)(3)(A).

Hiscox's counsel has now had the opportunity to review the underwriting file and is today serving amended objections to the subpoena's request for that file.  Because those amended objections are technically untimely until the Court modifies the subpoena to permit the additional time requested, Hiscox continues to request that modification. Hiscox is also amending its motion to quash to brief its complaints about the request for its underwriting file.

3

### B. Campbell's Subpoena Seeks Documents Protected by the Work-Product Privilege.

The federal work-product doctrine provides for the qualified protection of documents and tangible things prepared by or for a party or that party's representative "in anticipation of litigation or for trial." FED. R. CIV. P. 26(b)(3). "A document need not be generated in the course of an ongoing lawsuit in order to qualify for work product protection." *MM United Enter., Inc. v. AGCS Marine Ins. Co.*, No. 3:12-CV-3744-L, 2013 WL 12126235, at *3 (N.D. Tex. June 18, 2013). However, "the primary motivating purpose" behind the creation of the document must be to aid in possible future litigation. *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000). "In the context of an insurance dispute, the question of whether documents are work product often depends on whether the insurer can point to a definite shift from acting in its ordinary course of business to acting in anticipation of litigation." *MM United*, 2013 WL 12126235, at *4.

Among the factors relevant to determining the primary motivation for creating a document are "the retention of counsel and his involvement in the generation of the document and whether it was a routine practice to prepare that type of document or whether the document was instead prepared in response to a particular circumstance." *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 477 (N.D. Tex. 2004). If the document would have been created without regard to whether litigation was expected to ensue, it was made in the ordinary course of business and not in anticipation of litigation. *Id.*

On June 16, 2016, Campbell sent DC a letter demanding payment of approximately $1.3 million in losses arising from the allegedly defective water heating system and requesting that DC notify its insurer of Campbell's claim for damages. *See* Exhibit B, a true and correct copy of the letter. As requested, DC sent the letter to Hiscox and notified Hiscox of the claim on

4

June 20, 2016.  At this point, both DC and Hiscox clearly had a reasonable expectation that litigation would ensue in the future.  Hiscox thereafter began communicating with its insured about the claim and performing tasks and creating documents relating to the underlying claim and whether coverage existed for the claim.  It is this protected information that Campbell seeks in its subpoena.  Because the information sought is protected work product, Campbell's subpoena must be quashed.  *MM United*, 2013 WL 12126235, at *4; FED. R. CIV. P. 45(d)(3)(A).

> **C.     Campbell's Subpoena Creates an Undue Burden by Seeking Irrelevant Information and Making Overly Broad Requests.**

As noted, Rule 45(c)(3) requires a court to quash or modify a subpoena that subjects a person to undue burden.  "A facially overbroad subpoena is unduly burdensome." *Turnbow v. Life Partners, Inc.*, No. 3:11-CV-1030-M, 2013 WL 1632795, at *1 (N.D. Tex. Apr. 16, 2013) (citing *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D.Tex.2003)).  Further, "[w]hen a nonparty is the subject of discovery, heightened restriction on such discovery is warranted to protect the nonparty from harassment, inconvenience, or disclosure of confidential documents."  *Keller v. Cox Radio, Inc.*, SA-08-CA-00284-OLG, 2009 WL 10700193, at *2 (W.D. Tex. Apr. 6, 2009) (citations omitted).  "Therefore, to obtain discovery from a nonparty, a party must establish that its need for discovery outweighs the nonparty's interest in nondisclosure." *Id.*

In this case, Hiscox understands that Campbell has already received from DC the only insurance information that the Federal Rules of Civil Procedure expressly authorize a plaintiff to obtain from a defendant: the insurance policy itself.  *See* FED. R. CIV. P. 26(a)(1)(A)(iv).  Hiscox further understands that DC has provided a copy of Hiscox's March 2019 declination of coverage letter to Campbell.  Hiscox is willing to provide those documents to Campbell again, if necessary.  But the other claim file and underwriting file documents sought by Campbell are

5

beyond the scope of insurance discovery contemplated by the Federal Rules of Civil Procedure and are not relevant to any issue in this lawsuit. As a nonparty to the professional liability insurance contract issued to DC, Campbell has no rights under that contract until it obtains a judgment against DC that is covered by the contract/policy. *See State Farm Cnty. Mut. Ins. Co. of Tex. v. Ollis*, 768 S.W.2d 722, 723 (Tex. 1989) (stating that a party injured by the insured "cannot enforce the policy directly against the insurer until it has been established, by judgment or agreement, that the insured has a legal obligation to pay damages to the injured party."); *Nat'l Am. Ins. Co. v. Breaux*, 368 F. Supp. 2d 604, 620 (E.D. Tex. 2005) (citing *Ollis* for the same proposition). Campbell's lack of standing under the policy underscores the undue burden involved with its attempt to obtain irrelevant claim and underwriting documents from Hiscox.

Moreover, to the extent there is any purpose to the request for underwriting file beyond a pure fishing expedition, the purpose would be to determine the intent of the parties to the insurance contract. But "[o]nly where a contract is ambiguous may the courts consider the parties' interpretation . . . and admit extraneous evidence to determine the true meaning of the instrument." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (internal citations omitted). Thus, the *CBI Industries* court held that, in the absence of any ambiguity in the pollution exclusion at issue, the trial court did not abuse its discretion in granting summary judgment for a group of general liability insurers without allowing the insured discovery of the parties' interpretation of the exclusion, including prior dealings and negotiations. *Id.* at 520-22.

The Fifth Circuit applied *CBI Industries* in *Broughton v. Castlepoint National Insurance Co.*, 656 Fed. App'x 729 (5th Cir. 2016). There, the Fifth Circuit held that the district court did not err in granting summary judgment for a general liability insurer based on an exclusion that

applied to property damage arising from a "tract housing project or development," which the exclusion defined as the construction of five or more residential buildings in a project or development. *Id.* at 731-34. In so holding, the court rejected the plaintiffs'[1] argument that a supplemental questionnaire submitted by the insurer to the insured—a quintessential underwriting document—demonstrated that the parties intended the exclusion to apply only to tract housing projects involving *more than* five units. *Id.* at 732-34 & n.2 (emphasis added). The court reasoned that parole evidence of the parties' intent was not admissible in the absence of any ambiguity in the exclusion. *Id.* at 733-34 (citing *CBI Indus., Inc.*, 907 S.W.2d at 520).

Based on *Broughton* and *CBI Industries*, any information in Hiscox's underwriting file is irrelevant to the question of coverage under the policy at issue (Certificate No. ANE1125808.15) or any other policy, in the absence of a showing of ambiguity. There has been no allegation—much less a showing—of any ambiguity in any policy. As a result, Campbell's request for the underwriting file of a nonparty insurer is unduly burdensome because it is irrelevant or, at the very least, premature.

Furthermore, Campbell seeks not just *any and all* documents *and* communications related to the underlying policy, prior versions of said policy, and the underwriting file, it also requests *all* non-privileged documents in Hiscox's possession, custody or control, including *but not limited to* such communications relating to the policies and underwriting file. As written, such requests are not limited by any reasonable restriction on time or subject, and seek information that is wholly irrelevant to Campbell's claim against DC or DC's insurance coverage.

This is particularly true with respect to the request for the underwriting file. Because Hiscox insured DC for an eight-year period from 2009 to 2017, the underwriting file contains

---

[1] In *Brougton*, the plaintiffs had obtained a judgment against the insured contractor, giving them standing as judgment creditors to sue the liability insurer. *Id.* at 731, 733. In contrast, Campbell has not obtained any judgment against DC and is a stranger to the insurance contract.

documents spanning that entire period. However, only Certificate No. ANE1125808.15, which was in effect from December 7, 2015 to December 7, 2016, is potentially implicated here, as it was the claims-made policy in effect when the claim against DC was first made. *See Prodigy Commc'ns Corp. v. Agric. Excess & Surplus Ins. Co.*, 288 S.W.3d 374, 378-79 (Tex. 2009) (discussing how claims-made policies cover only claims first made against the insured during the policy period). Campbell's request for the entire underwriting file from a nonparty insurer is therefore unduly burdensome, even assuming that Campbell had demonstrated its relevance.

In short, Campbell's subpoena constitutes a classic "fishing expedition." It is unduly burdensome because it seeks information that is not relevant to its claims against DC and is overbroad. The subpoena also implicates the "heightened restriction" that protects a nonparty from "harassment, inconvenience, or the disclosure of confidential documents." *Keller*, 2009 WL 10700193, at *2. Consequently, Campbell's subpoena must be quashed. *See Turnbow*, 2013 WL 1632795, at *1 (quashing a subpoena containing overbroad requests that created an undue burden); *CBI Indus., Inc.*, 907 S.W.2d at 520-22 (holding that trial court did not abuse its discretion in denying discovery of parties' intent in absence of any ambiguity in policy); *Broughton*, 656 Fed. App'x at 732-34 (holding that underwriting questionnaire was irrelevant parole evidence in absence of policy ambiguity).

## III.
## CONCLUSION AND PRAYER

Campbell's subpoena seeks documents and information protected by the work-product privilege and creates an undue burden by seeking irrelevant and overly broad information from a nonparty. Accordingly, Hiscox respectfully requests that this Court grant this motion and issue an order quashing Campbell's subpoena. Hiscox also requests any other relief to which it is justly entitled.

Respectfully submitted,

THOMPSON, COE, COUSINS & IRONS, L.L.P.


By: */s/ Wade C. Crosnoe*
    Wade C. Crosnoe
    Texas State Bar No. 00783903
    Ross G. Reyes
    Texas State Bar No. 24105707

701 Brazos, Suite 1500
Austin, TX 78701
Telephone: (512) 703-5078
Telecopy: (512) 708-8777
E-mail: wcrosnoe@thompsoncoe.com
E-mail: rreyes@thompsoncoe.com

**Attorney for Nonparty Hiscox, Inc.**

9

## CERTIFICATE OF CONFERENCE

I certify that I complied with the "meet and confer" requirements of Local Rule CV-7(h). Specifically, I discussed Hiscox's objections to Campbell's subpoena and need for additional time to object to the subpoena and produce documents in a phone conference with Campbell's counsel, Allen Rutz, on April 30, 2019, and in written communications with him and his co-counsel, Mitch Tobias, and their local counsel, Clyde Siebman and Jeff Burley, on April 30 and May 1, 2019. Those discussions were in connection with the original motion to quash. In connection with this amended motion, I conferred with Mr. Rutz by phone on May 14, 2019, and exchanged emails with him the following day. Those discussions resulted in an agreement on one issue: Hiscox's request for an additional two weeks, or until May 22, 2019, to produce documents in response to the subpoena. To that extent only, this motion is unopposed. However, an impasse was reached on the remaining issues: (1) Hiscox's request for a two-week extension of time to object to the subpoena and (2) Hiscox's substantive objections to the subpoena. Accordingly, this motion is opposed—with the exception of the request for two additional weeks to produce documents—and is presented for the Court's determination.

*/s/ Wade C. Crosnoe*
Wade C. Crosnoe

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this document was served on the following counsel of record and all other counsel via the Court's Electronic Case Filing (ECF) system on May 16, 2019:

Mitchell Tobias
Vorys, Sater, Seymour and Pease, LLP
52 East Gay Street,
P.O. Box 1008,
Columbus, OH 43216-1008
E-mail: matobias@vorys.com
E-mail: alrutz@vorys.com
*Attorneys for Plaintiff*
*Campbell Soup Supply Company, LLC*

Clyde Siebman
Jeff Burley
Siebman, Forrest, Burg & Smith, LLP
4949 Hedgecoxe Road, Suite 230
Plano, TX 75024
E-mail: clydesiebman@siebman.com
E-mail: jeffburley@siebman.com
*Attorneys for Plaintiff*
*Campbell Soup Supply Company, LLC*

Zach Mayer
Sarah Krumholz
MAYER LLP
750 N. Saint Paul Street, Suite 700
Dallas, TX 75201
E-mail: ZMayer@mayerllp.com
E-mail: SKrumholz@mayerllp.com
*Attorneys for Defendant Direct*
*Contact, LLC*

*/s/ Wade C. Crosnoe*
Wade C. Crosnoe